# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ESTATE OF ANN RINK,<br>by its Executor, Michael Rink,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., as Securities Intermediary,<br><br>Defendant. | C.A. No. _____<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, the Estate of Ann Rink (the "Estate"), by its executor, Michael Rink, files and asserts this Complaint against Defendant, and in support thereof, alleges and says:

## PARTIES

1.  The Estate was established in North Carolina after the death of Ann Rink, a resident of the State of North Carolina. Ms. Rink was at all times relevant to this Complaint a citizen of the State of North Carolina. The executor of the Estate is Ms. Rink's son, Michael Rink, a citizen of North Carolina, who brings this law suit. The Estate is a citizen of the State of North Carolina.

2.  Upon information and belief, Wells Fargo Bank, N.A., as Securities Intermediary, is a national banking association with its principal place of business

in Sioux Falls, South Dakota. Wells Fargo Bank is being named solely in its capacity as Securities Intermediary.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff, a citizen of North Carolina, and the Defendant, Wells Fargo Bank, N.A., a citizen of South Dakota, and because the amount in controversy exceeds $75,000.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiff's claims occurred in the Western District of North Carolina.

## FACTS COMMON TO ALL CLAIMS

5. For hundreds of years, speculators have sought to use insurance to wager on the lives of strangers. *See, e.g.*, *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1069 (Del. 2011) (noting that life wagering has existed "[s]ince the initial creation of life insurance"); *Sun Life Assur. Co. v. Wells Fargo Bank, N.A.*, 238 N.J. 157, 164 (2019) (explaining that human life wagering has existed since at least 1419). Under the laws of most jurisdictions, including Delaware and North Carolina, such wagering transactions are void *ab initio* and of no effect. *See e.g., Wharton v. Home Sec. Life Ins. Co.*, 173 S.E. 338, 339 (N.C. 1934).

2

6. Although human life speculators have been around for hundreds of years, never has the human life wagering problem been more wide-spread or involved such vast amounts of money than in recent years. In the early 2000s, institutional investors began pooling large blocks of high-value life insurance policies into special purpose vehicles, such as tax-exempt entities or trusts, the interests of which were securitized and sold to other investors. *See*, *e.g.*, Susan Lord Martin, *Betting on the Lives of Strangers: Life Settlements, STOLI, and Securitization*, 13 U. Pa. J. Bus. L. 173, 192 (2010).

7. It is well established, however, that in the early 2000s, there was not a sufficient supply of existing life insurance policies to satisfy investor demand. In particular, investors were interested in high face amount policies insuring the lives of senior citizens, but there were only "a limited number of seniors who had unwanted policies of sufficiently high value." *Price Dawe*, 28 A.3d at 1070. "As a result, STOLI promoters sought to solve the supply side shortage by generating new, high value policies." *Id*. These policies are often referred to as STOLI—meaning stranger originated life insurance. *Id*.

8. One such STOLI promoter was a family of interrelated Delaware entities known generally as Coventry.

9. Entities such as Coventry—known in the STOLI industry as "funders"—worked with a nationwide network of insurance producers, who, acting

as the funders' agents, assisted the funders by, among other things, identifying senior citizens meeting the funders' investment criteria and influencing those seniors to become involved in the STOLI transactions the funders were orchestrating.

10. The STOLI transactions orchestrated by funders like Coventry and its agents were presented to hand-selected senior citizens in rosy terms that camouflaged the transactions' impropriety as being a "risk-free" opportunity, "just a good deal," or as being similar to "hitting the lottery" or acquiring a winning "bingo" card.

11. The specific mechanisms by which each funder's STOLI program operated could and often did vary in one respect or another. But each shared basic similarities, including that the policies at issue were procured by third parties that lacked an insurable interest in the insureds and that sought to wager on the life of the insureds.

12. In both Delaware and North Carolina, and other places, not only do these STOLI policies violate insurable interest laws, but they take advantage of senior citizens and otherwise distort the proper use of life insurance—which is to provide actual protection to an insured's family, or others with an insurable interest in the insured, in the event an untimely death—into a cash machine whereby a stranger to the insured is actually more interested in seeing the insured dead than alive.

13. Upon information and belief, in or around 2006, Coventry procured at least one life insurance policy on the life of Ms. Rink, a $1.5 million dollar policy from PHL Variable Insurance Company (the "Policy")—not for Ms. Rink or her family—but rather for investors such as themselves.

14. Although, upon information and belief, Coventry procured this Policy, Coventry did not have an insurable interest in Ms. Rink's life.

15. To facilitate this transaction, Coventry created Ann Rink 2006 Insurance Trust (the "Trust"), installed Wilmington Trust as its trustee, and used the Trust as a cover to procure the Policy without a valid insurable interest. The Trust is or was a Delaware statutory trust, formed pursuant to the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, *et seq.* with its principal place of business in Wilmington, Delaware. Upon information and belief, Defendant Wilmington Trust Company is or was the trustee of the Trust with its principal place of business in Wilmington, Delaware.

16. Upon information and belief, Wilmington Trust may have, at the direction of Coventry, later transferred the interests in the Trust (i.e., the Policy) as part of the STOLI scheme, thus depriving the Estate of the benefit of the Policy. Such interest in the Trust was transferred to Wells Fargo Bank, acting as securities intermediary for other unknown principals.

17. On October 5, 2018, Ms. Rink passed away.

18. Upon information and belief, a claim for the Policy's death benefit was made by or on behalf of Defendant and was then paid by the issuing insurance carrier to the Defendant and/or an entity related to the Defendant.

## **FIRST CAUSE OF ACTION: RECOVERY OF INSURANCE PROCEEDS DUE TO LACK OF INSURABLE INTEREST**

19. The Estate hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

20. Upon information and belief, the Policy is controlled by and subject to Delaware law.

21. The Delaware Insurance Code provides, among other things, that "no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured." 18 Del. C. § 2704.

22. The Delaware Supreme Court has clarified that this insurable interest requirement is not satisfied where a third party without an insurable interest uses an insured as an instrumentality to procure a policy for itself as a wager on the insured's life. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011).

23. Where an insurance company pays the death benefit on a policy lacking insurable interest, the "executor or administrator" of the insured is entitled to recover such benefits from the beneficiary, assignee, or payee that received the benefits as a matter of common law and statute. 18 Del. C. § 2704 (b). See, e.g., *Estate of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263 (S.D. Fla. 2019).

24. Upon information and belief, the Policy at issue in this case was procured without insurable interest as a wager on Ms. Rink's life.

25. Upon information and belief, the Policy's death benefit was paid, transferred, or otherwise assigned to the Defendant, an entity related to the Defendant, or an entity on whose behalf Defendant acted.

26. As a consequence, the Estate is entitled to recover those death benefits (plus applicable interest, attorneys' fees, and other costs and damages) from or through the Defendant.

## SECOND CAUSE OF ACTION: IN THE ALTERNATIVE, UNJUST ENRICHMENT

27. The Estate hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length, and sets forth this cause of action in the alternative to the Estate's preceding claim.

28. The Defendant's acceptance and retention of the Policy's death benefit has enriched Defendant or their principals, to the detriment of the Estate. Given the

circumstances surrounding the procurement of the Policy, allowing Defendant, or those on whose behalf Defendant acted, to retain the proceeds of the Policy is inequitable and without justification including because, among other things, the Policy was procured without insurable interest to wager on Ms. Rink's life, in violation of applicable law and public policy.

29. Accordingly, the Estate is entitled to an award of the Policy's entire death benefit (plus applicable interest, attorneys' fees, and other costs and damages) from Defendant, or those on whose behalf Defendant acted.

Dated: March 24, 2020

By: *s/Tracy L. Eggleston*
Tracy L. Eggleston (No. 18471)
Attorney for Plaintiff
COZEN O'CONNOR
301 South College Street, St. 2100
Charlotte, NC 28202
Telephone: (704) 348-3409
Facsimile: (704) 334-3351
Email: teggleston@cozen.com

*Attorney for Plaintiff*