IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00039-KDB

| | |
|---|---|
| ESTATE OF ANN RINK, by its executor, MICHAEL RINK<br><br>Plaintiff,<br><br>v.<br><br>VICOF II TRUST,<br><br>Defendant. | ORDER |

**THIS MATTER** is before the Court on the Parties' Motions in Limine, Doc. Nos. 93-95, 97-99, and Plaintiff's Motion for Leave to Amend Complaint, Doc. No. 86. As previously discussed by the Court in deciding the Parties' cross-motions for summary judgment, Doc. No. 78, this dispute centers on the questioned legality of a complex series of financial transactions insuring the life of North Carolina resident Ann Rink and the ultimate recovery of the insurance proceeds by Defendant, a Delaware trust, upon Ms. Rink's death. Specifically, Ms. Rink's Estate filed this action alleging that it is entitled to the proceeds of Ms. Rink's life insurance because the insurance contract was illegal and prohibited by public policy as a "wager" on her life lacking a proper insurable interest. Defendant contends that the policy was entirely lawful. The Court has carefully considered these motions and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** and **DENY** the motions for the reasons and to the extent described below.

1

**Plaintiff's Motions in Limine:**

**Motion #1 (Doc. No. 93)** –

On April 15, 2021, Plaintiff Estate took a deposition of Defendant under Rule 30(b)(6), for which VICOF designated Joseph McCray as its corporate representative. On May 26, 2021, VICOF provided to Plaintiff's counsel an errata sheet (the "Errata Sheet") for the deposition. In its first Motion in Limine, the Estate asks the Court to exclude and strike the Errata Sheet on the grounds that the Errata Sheet makes numerous material changes to the deposition testimony. In part, the Estate describes the changes as follows:

> For example, Mr. McCray actually testified that "the identity of the carrier does not have any effect on the insurable interest analysis." Ex. B, at 160:4-7. But in the Errata Sheet, VICOF changes the response to "No it is highly relevant." Ex. C, at ¶ 10. By way of further example, Mr. McCray testified that "before [VICOF] acquired the Rink policy, VICOF was certainly on notice that the Rink estate might file a similar lawsuit seeking to obtain the death benefit under the Rink policy." Ex. B, at 231:12-16. In the Errata Sheet, VICOF changed the response to "Incorrect. VICOF was not on notice that [the] Rink estate might file a similar lawsuit seeking to obtain the death benefit under the Rink Policy." Ex. C, at ¶ 17.

In sum, Plaintiff argues that such changes are impermissible and it will be prejudiced if the Court allows the "Errata" testimony, which directly contradicts Mr. McCray's original 30(b)(6) testimony, to be presented.

The Court agrees with Plaintiff that most of the "Errata" changes made by VICOF's 30(b)(6) witness go well beyond the clarifications and corrections that the rules permit. Federal Rule of Civil Procedure 30 governs depositions by oral examination and provides in relevant part that the deponent may review the transcript "and, if there are any changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them." Fed. R. Civ. P. 30(e)(1)(B). Changes in "form" mean typographic errors. Changes in "substance" relate to incorrect reporting. *See Guthrie v. PHH Mortgage Corp.*, 2022 WL 706923, at *4

(E.D.N.C. Mar. 4, 2022) ("A change in 'form' would include correcting a typographical error or a spelling error. A change in 'substance' would include the substantive correction of a court reporter's transcription (i.e., the witness answer 'No,' but the court report records 'Yes')." (quoting *William L. Thorp Revocable Tr. v. Ameritas Inv. Corp.*, 57 F. Supp. 3d 508, 518 (E.D.N.C. 2014))). However, Rule 30(e)(1)(B) "does not permit a party to make changes that substantively contradict or modify [a] sworn deposition." *See Thorp*, 57 F. Supp. 3d at 518; *Blundell v. Wake Forest Univ. Baptist Med. Ctr.*, 2006 WL 694630, at *3-4 (M.D.N.C. Mar. 15, 2006) (striking errata sheet and agreeing that "Rule 30(e) should not be interpreted to allow a deponent to materially alter what was said under oath, because a deposition is 'not a take home examination.'").

For example, in *Attic Tent, Inc. v. Copeland*, 2007 WL 174679, at *7 (W.D.N.C. Jan. 22, 2007), this Court struck an errata sheet, holding that "those witnesses' errata sheets are nothing more than a *post hoc* attempt to reverse potentially damaging admissions, apparently to conform their testimony to what [their counsel] now believes would be if not a more favorable, then at least a less damaging set of facts." *Id.* The Court continued that "rather than explain their earlier answers, [the witnesses] impermissibly seek to directly contradict their testimony, substituting 'No' for a 'Yes' or other affirmative responses in most instances." *Id.* Ultimately, because "the errata sheet does not afford the deponent a second bite at the apple in the form of completely reversing the earlier testimony," the Court struck the errata sheets. *Id.* Other federal courts within North Carolina have more recently reached the same conclusion. *See, e.g., Guthrie*, 2022 WL 706923, at *4 (E.D.N.C. Mar. 4, 2022) (granting motion to strike errata sheet because "[t]he changes identified by [the party] are more than typographical or substantive."); *Sheet Metal Workers' Health & Welfare Fund v. Stromberg Metal Works, Inc.*, 2021 WL 4344934, at *3 (E.D.N.C. Sept. 22, 2021) (granting motion to strike because "[the witness's] errata do more than

3

correct the record. Rather, they reflect substantive modifications of the sworn testimony."); *William L. Thorp Revocable Tr.*, 57 F. Supp. 3d at 518 (collecting cases and striking errata sheet because of "material changes.").

Thus, the greater weight of recent authority supports not allowing a party to simply change their testimony after the deposition through an errata sheet. And, this Court agrees with that analysis. Although the Fourth Circuit has not defined "substance" within Rule 30(e), the Court concludes that the best reading of the rule is consistent with the case law cited above that does not allow substantive material changes. If Rule 30 were interpreted otherwise, live sworn deposition testimony would become nothing more than a temporary placeholder until the witness' lawyers revise the testimony to their liking, and the parties might often embark on a course of serial deposition questioning about the witness' ever changing testimony (with the possibility of yet more errata revisions with each successive round of questions).[1] Such an unwieldly regime not only risks obscuring the search for authentic, truthful testimony, but also plainly fails the fundamental requirement that the rules be "construed, administered, and employed … to secure the just, speedy and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

Applying Rule 30, as correctly interpreted, there is no dispute that nearly all of VICOF's 30(b)(6) Errata Sheet testimony blatantly changes the original testimony, either by directly changing affirmative to negative answers (or vice-versa) or adding further testimony (plainly crafted by VICOF's lawyers) that either changes the sense of the testimony or simply adds additional details or arguments that VICOF presumably finds helpful. Accordingly, Plaintiff's

---

[1] An adverse party or deponent's counsel is of course not powerless to correct a witness' "misstatements." A deposition affords all of the attending parties as well as the deponent's counsel an opportunity to examine the witness at the deposition. Also, a party or witness could petition the Court outside of the errata process of Rule 30 to allow a change in the testimony for good cause shown.

4

motion in limine #1 will be granted as to all of the Errata testimony other than Errata Sheet paragraphs 1, 9, 14, 21 and 34, which the Court finds to either be a requested supplementation of the 30(b)(6) testimony or a permissible modification of the original testimony that does not unfairly prejudice the Estate. Further, the Defendant can of course present evidence in its own case or in cross-examination of one of Plaintiff's witnesses that reflects the testimony that it seeks to include through the Errata Sheet.[2]

**Motion #2 (Doc. No. 95)** -

In its second motion in limine, the Estate asks the Court to exclude all testimony by Ryan Byrd, who is an assistant counsel at Magna Life Settlements, Inc., which is related to VICOF through a common parent company. Plaintiff argues that the Court should exclude Byrd's testimony because VICOF disclosed that he was a potential witness for the first time on April 1, 2022, even though VICOF served initial and amended disclosures and interrogatory responses in 2020 and 2021 that purported to identify all potential witnesses (not including Byrd). In its response to this motion, VICOF counters that it is "baffled" by the motion because Plaintiff itself recently requested that VICOF make Mr. Byrd available to testify. The Court will defer ruling on this motion until after it has an opportunity to question the parties at the upcoming pretrial conference regarding the parties' very different versions of this dispute.

**Motion #3 (Doc. No. 97)** –

The Estate's third motion in limine asks the Court to "exclude testimony or evidence regarding Cozen O'Connor, the Estate's engagement of Cozen O'Connor, and the Estate's alleged

---

[2] In its Reply brief, Plaintiff states that if Mr. McCray is available at trial to testify in Plaintiff's case, then this motion may have been unnecessary. However, in the event Mr. McCray testifies, testimony regarding disputed changes in the deposition transcript may still waste time and confuse the jury. Therefore, the Court believes this matter is best clarified prior to trial through this order.

motivation for filing suit." Plaintiff argues that "VICOF's disparaging of the Estate's motive in bringing this litigation, any reference or attack on the Estate's counsel, or any reference to the Estate's fee arrangement with counsel" are not relevant to the substantive issues in the case in violation of Federal Rules of Evidence 401 and 402 (irrelevant evidence is inadmissible) and also should be excluded under FRE 403 (evidence may be excluded if its probative value is substantially outweighed by a danger of, *inter alia*, unfair prejudice). In response, Defendant does not dispute that such arguments "are ordinarily not proper for the jury" and represents that it does not intend to introduce evidence or elicit testimony about the Estate's fee arrangement with its lawyers. However, VICOF states that it intends to ask the Estate's executor Michael Rink about the timing of the decision to file suit and other questions related to the suit's claims.

Accordingly, Plaintiff's third motion in limine will be granted with respect to testimony or argument regarding the Estate's fee arrangement with its counsel or any attack on the Estate's counsel with respect to the filing of this case or other cases. Also, while the Court generally agrees with Plaintiff that the Estate's "motivation" in filing suit or alleged "greed" is not relevant,[3] it will defer ruling on specific questions related to the timing of the Estate's action until trial so that it can better evaluate the particular relevance of the evidence being sought. *See*

---

[3] Whether a Plaintiff's intent in filing a suit is praiseworthy, altruistic or selfish is irrelevant to the merits of its claims. *See Braxton v. Eldorado Lounge, Inc*., No. CV ELH-15-3661, 2017 WL 11441948, at *3 (D. Md. June 27, 2017) ("… plaintiffs' possible motivations for filing suit, such as revenge or a desire to obtain a settlement, are not probative of a valid defense); *Samsung Elecs. Co. v. NVIDIA Corp.,* No. 3:14CV757, 2016 WL 754547, at *1–2 (E.D. Va. Feb. 24, 2016) ("The rule generally prevailing is that, where a suitor is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial; that the legal pursuit of his rights, no matter what his motive in bringing the action, cannot be deemed either illegal or inequitable; and that he may always insist upon his strict rights and demand their enforcement."); *see also Caldwell v. Wal-Mart Stores, Inc.,* 229 F.3d 1162 (10th Cir. 2000) ("Absent some evidence of fraud on Caldwell's part (and none was proffered), evidence of his financial motivation to bring the suit was not relevant to any of the issues in this case").

*Eclipse Packaging, Inc. v. Stewarts of Am., Inc.*, Civil Action No. 5:14-CV-00195-RLV-DCK, 2016 WL 1724360, at *1 (W.D.N.C. Apr. 29, 2016) ("motions in limine that seek the exclusion of broad and unspecific categories of evidence are generally disfavored," and the Court "is almost always better situated during the actual trial to assess the value and utility of evidence.").

**Motion #4 (Doc. No. 98)** –

Plaintiff's fourth motion in limine asks the Court to exclude all testimony regarding the personal relationships between Michael Rink, the executor of the Estate, and Ann Rink's other sons, Phillip and Dana Rink. More specifically, during their depositions, the other brothers made the following statements that generally reflect the testimony Plaintiff seeks to exclude:

• Phillip said he does not trust his brother Michael and he believes he is greedy. (Phillip Dep. 70:5-71:13)

• Phillip said that his brother had their parents change their will to the benefit of Michael. (Phillip Dep. 21:9-22:23:8)

• Phillip said he and Dana do not get along with Michael. (Phillip Dep. 26:19-27:4)

• Phillip said there has been bad blood between him and Michael since the 1980s. (Phillip Dep. 30:20-31:17)

• Phillip said it was difficult to work with Michael. (Phillip Dep. 53:18-54:2)

• Dana said that Michael told him he needed to testify in this case or he could get in trouble if he did not. (Dana Dep. 9:11-24)

• Dana said that they are not a close knit family. (Dana Dep. 39:16-20)

Plaintiff argues that these comments (or similar testimony regarding the relationship among the family members) is irrelevant and unduly prejudicial under FRE 401 and 403. Defendant's response to this motion is similar to its response to the preceding motion; that is, Defendant disclaims any intent to present testimony generally related to the poor "relationship" among the

7

brothers but argues that specific evidence from brother Phillip against Michael Rink is relevant to its defenses and counterclaims.

As with the third motion related to Plaintiff's counsel, the Court agrees, in part, with both sides. The Court agrees with Plaintiff that the overall relationship among the brothers (i.e. whether or not they "get along") as well as Philip's broad allegation that Michael is "greedy" are irrelevant to Ms. Rink's procurement of the insurance policy at issue. However, it would be proper for Philip to testify to facts within his personal knowledge (as distinguished from inadmissible hearsay about his beliefs concerning the intentions of others) that may relate to VICOF's argument that "estate equalization" was a goal of the insurance purchase or other relevant issues. Again, for this potentially proper testimony, the Court must await specific questions at trial to fully evaluate their propriety. Therefore, the Court will grant Plaintiff's motion and exclude general testimony from the Rink brothers concerning their poor personal relationship, but beyond that ruling will defer until a particular question is asked at trial to rule on the admissibility of other testimony from Philip and Dana Rink against their brother.

**Motion #5 (Doc. No. 99)** –

In its final fifth motion in limine, Plaintiff seeks to exclude evidence from Mr. John Setzler, Ms. Rink's insurance agent, that VICOF claims reflects a legitimate estate planning purpose for the Policy—namely, that Ms. Rink supposedly intended to use the Policy to "equalize" her estate. More specifically, the Estate wants the Court to exclude a "Cover Letter," "Statement of Client Intent," and a "Producer's Report" and any reference to or testimony about the alleged "estate equalization" plan. Plaintiff asserts two grounds for excluding the evidence. First, Plaintiff argues the evidence is "irrelevant" because these application materials related to a $5 million policy which was not issued; instead, Ms. Rink took out the $1.5 million policy which is in dispute. More

broadly, Plaintiff argues that VICOF's "estate equalization" theory is flawed and the Court should in effect take the argument away from the jury lest they erroneously accept it. Second, Plaintiff briefly argues that the documents are hearsay and are not admissible under any exception. Defendant opposes this motion on the ground that this evidence is critical to the jury's decision on whether the Policy is supported by an insurable interest and is not hearsay.

The Court agrees with the Defendant. While this motion perhaps provides a good forecast of Plaintiff's arguments to the jury as to why the Defendant's "estate equalization" should not be accepted, it does not present grounds for the Court to exclude the evidence. It is for the jury, not the Court, to weigh this evidence at trial as the trier of facts.

With respect to Plaintiff's argument that the evidence is inadmissible hearsay, if Mr. Seltzer's statements were made as Ms. Rink's agent they would not be hearsay as the statement of the agent of an opposing party. *See* FRE 801(d)(2)(D); *Abelmann v. SmartLease USA, LLC*, 437 F. Supp. 3d 736, 738 (D.N.D. 2020) (describing cases in which courts "have concluded that a decedent's statements can be admitted as admissions by a party opponent under Rule 801(d)(2) based on the conclusion that a decedent and the estate of the decedent are essentially the same for purposes of the Rule"); *Royal Embassy of Saudi Arabia v. S.S. Ioannis Martinos*, Nos. 81-48-CIV-7; 81- 126-CIV-7, 1984 WL 71083969 (E.D.N.C. Aug. 27, 1984) (admitting testimony from an agent "because he is an agent relating events regarding his principal" under Rule 801(d)(2)(D), which "addresses statements made by an agent during or after the event in question - when such statement can be repeated and become evidence as an admission of the principal."). Also, even if

9

the statements are hearsay, then they may satisfy the business records exception, as part of a standard insurance policy application. *See* FRE 803(6).[4]

Accordingly, the Estate's fifth motion in limine will be denied.

**Defendant's Motion in Limine** –

VICOF has filed one motion in limine, Doc. No. 94, which asks the Court to exclude evidence and argument regarding four other lawsuits from 2016 -2021 (the "Other Litigation") which involve similar claims concerning "stranger originated" life insurance policies sold to seniors by the "Coventry" group of companies. Defendant is concerned that Plaintiff will try to introduce into evidence the judicial findings in these cases that hold the "Coventry" program to be unlawful under Delaware law. VICOF argues this should not be permitted because the Other Litigation are irrelevant to the issue to be tried in this case, which is whether there was a proper insurable interest when Ms. Rink purchased the Policy in 2006. Plaintiff opposes this motion, arguing that the findings by the courts in the Other Litigation can be introduced as reliable substantive evidence in this case and that the Other Litigation is in any event relevant to Defendant's UCC bona fide purchaser defense, which puts at issue VICOF's notice of a potential claim.

With respect to the use of the findings and conclusions in the Other Litigation as substantive evidence, the Court agrees with Defendant. The findings by another court, applying different law, in a different case involving different parties (even where there is some similarity of counsel and certainly interests) will not be permitted to be introduced into this case as substantive

---

[4] Plaintiff contends that the evidence presented at trial will not support a finding that Mr. Setzler acted as Ms. Rink's agent or that the documents are a business record. The Court will therefore permit Plaintiff to reassert its hearsay objection at trial, where the Court will have the full benefit of the testimony, as discussed above with respect to other disputed evidence.

10

evidence, even though the "Coventry program" at issue in the Other Litigation may be the "same" transaction that is in dispute here. Although some evidence of the so-called "Coventry program" documents and transaction flow may well be found to be relevant evidence in this case[5] (an issue that is not directly presented by this motion), Plaintiff must prove those facts independent of the Other Litigation.[6] First, judicial findings in other cases typically reflect inadmissible hearsay. *See Nipper v. Snipes,* 7 F.3d 415, 417 (4th Cir. 1993) (holding that judicial findings in another court's order in a case involving some of the same parties was hearsay under Fed.R.Evid. 801(c), which was not admissible under an exception).

Second, presenting alleged facts as the findings of a court gives them an additional imprimatur of credibility to which Plaintiff is not entitled and thus the proffered evidence may be excluded under Fed. R. Evid. 403. *Id.* at 418. "This is because judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" *Id.*, citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1125, 1186 (E.D. Pa.1980); *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir.1987) ("A practical reason for denying [judgments] evidentiary effect is ... the difficulty of weighing a judgment, considered as evidence, against whatever contrary evidence a party to the current suit might want to present. The difficulty must

---

[5] While the issue of "insurable interest" in this case is clearly limited to Ms. Rink's Policy rather than the overall propriety of the "Coventry program," the evidence that the jury may consider in determining if the Policy is supported by an "insurable interest" is broader than suggested by VICOF. The jury will be permitted to consider all the relevant circumstances, including some evidence about the "Coventry program" of which the Policy was a part, to determine whether the Policy, in substance as well as form, reflected a lawful purchase of insurance coverage or was instead a "cover for a wager" on Ms. Rink's life.

[6] Again, to the extent the basic "Coventry program" facts and documents are not actually in dispute, the Parties are encouraged to stipulate to their introduction into evidence.

11

be especially great for a jury, which is apt to give exaggerated weight to a judgment."). Therefore, Plaintiff may not introduce the judicial findings in the Other Litigation as substantive evidence.

However, the Court agrees with Plaintiff that to the extent VICOF contends that it is entitled to retain the death benefits paid pursuant to the Policy as a bona fide purchaser under the UCC, Plaintiff may – subject to the limiting instruction discussed below – introduce evidence of VICOF's knowledge of the Other Litigation, including the outcome of those cases. Specifically, Plaintiff seeks to introduce evidence of the Other Litigation in support of its argument that VICOF cannot establish that it is a bona fide purchaser without notice of an adverse claim because it was aware of a "significant probability" that an adverse claim existed, in part because of the Other Litigation. While it will of course be up to the jury to determine the strength of Plaintiff's notice argument, the Court finds that Plaintiff is entitled to put before them evidence of Defendant's knowledge of the Other Litigation in response to Defendant's UCC defense.[7]

Although the Court will allow Plaintiff to introduce evidence related to the Other Litigation to establish VICOF's knowledge of an adverse claim, the evidence may only be introduced together with a limiting instruction from the Court[8] that informs the jury that they may consider

---

[7] In its Reply brief, VICOF threatens that if the Court permits the Estate to present evidence of the Other Litigation in response to VICOF's UCC defense then it will be "forced" to present counter evidence distinguishing the other cases, describing the fraction of "Coventry policies" that have been challenged and broadly arguing why insurance companies challenge policies and "estate" cases are now being filed in greater numbers. While VICOF will of course be permitted to present testimony (if otherwise admissible) to rebut Plaintiff's Other Litigation evidence, that testimony must relate to why the Other Litigation did not provide notice to VICOF of the significant probability of an adverse claim. Just as Plaintiff will not be permitted to present evidence or argue that the Coventry program or STOLI policies generally are or should be illegal, VICOF will not be permitted to expand its evidence or arguments to generally assail the motives of insurance companies, estates or their counsel. In other words, the Court intends to require the Parties to focus on the issues relevant to this case rather than arguments – on both sides – about the "industry" of STOLI policies and related litigation.

[8] The Parties may, on or before May 10, 2022, submit a proposed limiting instruction to the Court consistent with this Order.

12

the evidence only on the UCC notice issue and may not consider the findings and outcome of the Other Litigation with respect to any other issue, including whether or not the Policy is supported by an "insurable interest." Specifically, the Court will explain to the Jury, *inter alia*, that the Other Litigation involved, among other important differences, the law of a different state and the outcome of those other different cases should have no bearing at all on their verdict, except as it relates to the UCC issue for which the Court has allowed it to be admitted.

Accordingly, the Court will in part grant and in part deny Defendant's motion in limine, excluding the introduction of evidence of the Other Litigation as substantive evidence but allowing the introduction of the evidence in response to any claim by VICOF that they are entitled to retain the death benefits under the Policy as a UCC "bona fide purchaser."

**Motion to Amend Complaint**

Also pending before the Court is Plaintiff's Motion for Leave to Amend the Complaint, Doc. No. 86. In its original Complaint, filed March 24, 2020, Doc. No. 1, and Amended Complaint, filed May 19, 2020, Doc. No. 3, Plaintiff asserted two causes of action, both under Delaware law. By this motion to amend, filed two years later on March 31, 2022, Plaintiff seeks to amend the Complaint to add numerous factual allegations (allegedly reflecting its discovery efforts) and five new causes of action under North Carolina law, all in the alternative to its Delaware claims. Specifically, the proposed Second Amended Complaint adds causes of action for (1) recovery of insurance proceeds due to lack of insurable interest (which mirrors Plaintiff's first claim under Delaware law), (2) negligence *per se* for violating the prohibition on gambling found at N.C. Gen. Stat. § 16-1 (including a related request for punitive damages), (3) committing Fraudulent Viatical Settlement Acts, N.C. Gen. Stat. §§ 58-58-205(a)(1), 58-58-205(5)(b)(3), (4) committing a Prohibited Act, N.C. Gen. Stat. § 58-58-255, and (5) committing a Fraudulent Viatical Settlement

13

Act, N.C. Gen. Stat. §§ 58-58-205(5)(a)(1), (a)(2). Defendant opposes the amendment as untimely and futile.[9]

The Court agrees with the Defendant that the proposed Amendment is untimely under the scheduling orders entered in this action and the relevant rules of civil procedure. Plaintiff acknowledges that the deadline for amending pleadings as set forth in the Court's scheduling order has passed. *See* Doc. No. 21. In such a situation, "the Court conducts a two-step analysis." *Earthkind, LLC v. Lebermuth Co. Inc.*, No. 519CV00051KDBDCK, 2020 WL 8771419, at *1 (W.D.N.C. Dec. 1, 2020). First, the movant must satisfy Federal Rule of Civil Procedure 16(b)(4), which states that a scheduling order may be modified to amend a pleading "only for good cause and with the judge's consent." *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."); *Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment."). In determining whether good cause is met, "the factors to be considered . . . include the 'danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.'" *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010).

---

[9] Although Defendant has noted the number of paragraphs of additional factual allegations proposed in the second amended complaint, it has focused its objections on the new legal claims rather than the factual allegations. Further, it has not suggested that it would be prejudiced if the Court permitted the Plaintiff to allege additional facts or that additional discovery would be necessary if the factual amendments were permitted. Therefore, as ordered below, Plaintiff will be permitted to amend its complaint to assert its proposed additional factual allegations.

14

Second, the movant must satisfy Federal Rule of Civil Procedure 15(a)(2), which provides that for all amendments other than those as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." This is a liberal standard and the Rule provides that "[t]he court should freely give leave when justice so requires." *Id.*; *Cook*, 484 F. App'x at 814 ("Rule 15(a)(2) articulates a relatively liberal amendment policy . . . ."); *Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 576 (4th Cir. 2005) (noting that "leave to amend is a liberal standard"). "[M]otions to amend are to be granted in the absence of a 'declared reason' 'such as undue delay, bad faith, or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., futility of amendment, etc.'" *Ward v. Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987).

The Court finds in the exercise of its discretion that Plaintiff has failed to establish good cause for much of its belated effort to amend its Complaint to add new causes of action under North Carolina law. The Estate has been aware that VICOF claims that North Carolina law applies to any claim by Plaintiff under the Policy since June 2020, when Defendant filed its Answer and Counterclaims. Thus, Plaintiff had over seven months to add claims under North Carolina law before the deadline for amending the pleadings on January 18, 2021. Then, in July 2021, in its motion for summary judgment, Defendant again urged the Court to find that North Carolina law applied to Plaintiff's claims. And, in response, the Plaintiff argued not only that Delaware law applied but that it was entitled to summary judgment "even if North Carolina law applies," because "even if . . . the Estate's claim is controlled by North Carolina law, the Estate clearly has a right to recover the illegal STOLI proceeds VICOF received after perpetuating a wager on Ms. Rink's life." Doc. No. 65 at 14-16. Thus, not only was Plaintiff aware of the

15

possibility that North Carolina law might apply to its claims, it had apparently considered and believed it could maintain claims under North Carolina law by July 2021. Yet, Plaintiff took no action to amend its Complaint.

On December 20, 2021, this Court issued an Order denying the Parties' motions for summary judgment, Doc. No. 78, finding that North Carolina law governs Plaintiff's claims. On the same date, the Court scheduled the trial in this action for May 16, 2022,[10] which triggered numerous pretrial deadlines for the Parties under the Pretrial Order. *See* Doc. No. 21. Plaintiff did not seek to amend its Complaint until over three months later and briefing on the motion seeking leave to amend did not conclude until April 15, 2022, only three days before the Parties' trial briefs and motions in limine were due.

Other than its confident assumption[11] that the Court would apply Delaware law to its claims, Plaintiff has suggested no good cause for its failure to seek to amend its Complaint earlier. Ignoring the possibility that the Court would accept Defendant's repeated arguments that North Carolina law applied to the lawfulness of an insurance policy entered into in North Carolina with a lifelong North Carolina resident, Plaintiff simply took no action to amend its Complaint prior to the Court's ruling on the Parties' summary judgment motions. Then, when the Court ruled that North Carolina law applied, Plaintiff continued to sit on its hands for another three months until final trial preparations were well underway before it finally filed its motion to amend.

---

[10] Plaintiff notes that the Court also ordered the Parties to mediate their dispute on or before March 15, 2022. This obligation did not in any way stay the case or deny Plaintiff the opportunity to seek to amend its pleadings if it wanted to assert additional claims under North Carolina law at trial. Indeed, rather than excuse any delay, an upcoming mediation should have prompted Plaintiff to immediately seek to amend the Complaint so that all its trial claims could be considered by the Parties and the Mediator at the mediation.

[11] To be clear, the hubris of counsel with respect to their client's respective legal positions is not limited to Plaintiff but applies equally to Defendant.

In sum, Plaintiff's effort to amend its Complaint to add several new North Carolina statutory actions at this time is too much, too late and fails to satisfy Plaintiff's burden to establish good cause under Rule 16 for its belated motion. With the exception of its North Carolina common law claim that parallels its original Delaware claim,[12] allowing the assertion of new North Carolina statutory claims so close to trial will prejudice the Defendant. Further, the Court questions Plaintiff's good faith in waiting so long – until the eve of trial – to add additional claims. Finally, the addition of new claims at this late hour will markedly increase the complexity of the presentation of the claims to the jury and effectively deny the Defendant and the Court an opportunity to carefully review and consider the legal applicability of the new claims to this action,[13] thereby adversely affecting these judicial proceedings. Therefore, the Court will deny Plaintiff's motion to amend the Complaint pursuant to Rule 16 as to each of its proposed claims under North Carolina law other than its common law "insurable interest" claim. Specifically, Plaintiff's may amend its Complaint to assert its proposed second cause of action but not its proposed third, fourth and fifth causes of action. Also, the Court finds that Plaintiff has satisfied

---

[12] As ordered below, the Court will permit Plaintiff to amend its complaint to assert its common law claim under North Carolina law, which Defendant concedes mirrors the Delaware claim involving a lack of "insurable interest" which has been the subject of the litigation from the beginning.

[13] For example, Plaintiff's proposed third cause of action for negligence *per se* because of Defendant's alleged violation of N.C. Gen. Stat. §16-1 (making gambling contracts unlawful) does not appear to state a valid claim under North Carolina law. The Supreme Court of North Carolina has held that negligence per se may only be asserted for violations of a public safety statute. *See Hart v. Ivey*, 420 S.E.2d 174, 178 (N.C. 1992) (rejecting negligence *per se* claim because statute prohibiting sale of alcohol to persons under twenty-one years of age is "not a 'public safety' statute [which was] intended to protect the plaintiffs"). However, Section 16-1 is plainly not a "public safety" statute. While the statute makes certain gambling activities unlawful, the State of North Carolina otherwise permits, indeed sponsors, gambling through the North Carolina lottery. *See* N.C. Gen. Stat. § 18C-110. Therefore, a violation of Section 16-1 cannot be the basis of a claim of negligence *per se* under North Carolina law.

Rule 16 with respect to its request to amend its Complaint to add its proposed additional factual allegations primarily because of the lack of prejudice related to that amendment, as discussed above.

Having found that Plaintiff's motion to amend fails to satisfy Rule 16 for the portions of the proposed amended complaint that will not be allowed, the Court need not decide whether those proposed amendments satisfy Rule 15(a)(2). With respect to the amendments to the Complaint that will be permitted, the Court finds that they satisfy the more lenient standard for allowance of amendments under Rule 15 because there is no unfair prejudice with respect to those amendments, which reflect a legal claim and factual allegations that are well known to Defendant and which Defendant planned to defend against at trial.

Therefore, Plaintiff's motion for leave to amend its complaint will be granted as to its proposed second cause of action and its proposed additional factual allegations but denied as to the remainder of its requested amendments.

## ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Parties Motions in Limine (Doc. Nos. 93-95, 97-99) are **GRANTED** and **DENIED** to the extent and in the manner discussed above**;**

2. Plaintiff's Motion for Leave to Amend the Complaint (Doc. No. 86) is **GRANTED** and **DENIED** to the extent and in the manner discussed above**;** and

3. This case shall proceed to trial on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: May 6, 2022

Kenneth D. Bell